J-A08041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERWIN DEPAZ | : | |
| | : | |
| Appellant | : | No. 1333 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005427-2021

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　**FILED JULY 8, 2024**

Erwin DePaz appeals from the judgment of sentence entered following his non-jury trial convictions for voluntary manslaughter – unreasonable belief and possession of an instrument of crime (PIC).[1] DePaz challenges the sufficiency of the evidence and discretionary aspects of his sentence. We affirm.

The Commonwealth charged DePaz with numerous crimes including murder following an altercation with Christoper Reyes ("victim"). Evidence of the following was presented at trial.

On February 14, 2021, DePaz arrived at the home of Julian Lopez ("Lopez") for a social gathering. Oscar Reyes ("Reyes"), Gabriel Luna ("Luna"), and the victim were also in attendance. Reyes and DePaz had known each

---

[1] 18 Pa.C.S.A. §§ 2503(b) and 907(a), respectively.

other since elementary school. *See* N.T., Trial, 1/6/23, at 26. The attendees drank beer and tequila throughout the party, from 6:00 p.m. to 3:00 a.m. *See id.* at 25, 27, 44.

During the gathering, the victim and DePaz began to argue in the living room. *See id.* at 30, 35. The victim hit DePaz on the head with a Corona beer bottle, causing a half-inch cut above his eyebrow. *See id.* at 31, 35, 138, 144. DePaz left the living room, went through the dining room and walked into the kitchen, where he grabbed a knife. *See id.* at 30, 31, 37. Reyes, who was present during the argument, stood between them and asked them "not to fight" when he saw DePaz leave the kitchen with the knife. *Id.* at 31, 50. Reyes also testified that DePaz was quick in the kitchen, "in and out." *Id.* at 56. After exiting the kitchen, DePaz went back to the living room where he told Reyes to "stay out of the way" and then stabbed the victim. *Id.* at 16, 31, 33, 37; Commonwealth Ex. 39C (photograph of the living room). DePaz ran out the front door past Lopez, who was outside smoking a cigarette. *See id.* at 34, 73-74. Lopez called the police, but the victim died before they arrived. *See id.* at 10-11, 74.

DePaz testified in his defense. He said that after being hit with the bottle, he went to the kitchen "looking for a door to leave and go to my house, but the door was closed." *Id.* at 138. When he could not find an exit from the kitchen, DePaz "looked for something to defend [himself], and [he] found a knife." *Id.* DePaz testified that when he went back into the living room, the victim said, "I'm going to kill you," grabbed a bottle a second time, and then

tried to hit him. *Id.* At that moment, DePaz stabbed the victim and ran out the front door. *See id.* at 138, 141. DePaz also testified that Reyes was not standing between the victim and himself and "stepped to the side instead of preventing [the victim] to come towards me with a bottle." *Id.* at 145, 146. He also testified that Lopez was not outside during the altercation. *Id.* at 148-149.

The Commonwealth read in the summary of DePaz's statement to police:

> DePaz stated, in summary, that he was invited down the street to a friend's house. While inside the house, the males in the house attempted to get DePaz to snort cocaine, which he refused. DePaz stated the males threatened his family, including his children. DePaz stated that during the incident, the decedent had two beer bottles in his hands. DePaz stated he was hit above the left eye. DePaz showed a small laceration above his left eye to detectives. DePaz stated that he went to the kitchen and grabbed a knife off the counter because the males were threatening his family. That is when the males approached DePaz and he ended up stabbing the decedent. DePaz stated that he fled the property and later turned himself in to police. DePaz stated the knife he had in his possession was the knife he used to stab the victim. DePaz stated that he stabbed the victim one time in the left side of the abdomen.

*Id.* at 155.

The trial court found DePaz guilty of the above-referenced offenses. At sentencing, the court stated that it had reviewed the Presentence Investigation ("PSI") report. N.T., Sentencing, 4/4/23, at 3. The report indicated that DePaz did not have a prior record score, had "a hard life in Guatemala," and had a violent alcoholic father. *Id.* at 5. The Commonwealth

presented testimony from the victim's wife, as well as from Reyes and Lopez. The victim's wife testified about the impact of the victim's death on their children. Reyes stated that he had known DePaz for "quite a while" and knew him to be a good person. *Id.* at 20. Lopez told the court that he felt bad for DePaz "because I considered him a friend" and asked the court for a "just" sentence. *Id.* at 21.

The court heard testimony from DePaz's brother, wife, and a doctor who interacted with DePaz during his time in prison after his arrest. Each witness asked the court for leniency for DePaz. The court also heard from DePaz, who expressed regret and explained, "it would have been different if the person that died hadn't attacked me. And, honestly, I defended myself." *Id.* at 22, 23-24.

The court sentenced DePaz to six to 12 years' incarceration for voluntary manslaughter, followed by two and one half to five years' incarceration for PIC. DePaz filed a post-sentence motion arguing that the court had imposed an excessive sentence and had disregarded the Sentencing Guidelines because the sentence for PIC was the maximum and consecutive to the manslaughter sentence. *See* Post-Sentence Motion, filed 4/13/23, at ¶ 6. The court denied the motion, and this timely appeal followed.

DePaz raises two issues:

I.   The evidence was insufficient to find [DePaz] guilty beyond a reasonable doubt of Voluntary Manslaughter, Unreasonable Belief (F1) and PIC (M1) when the evidence through testimony from Commonwealth witnesses and through his own

testimony established [DePaz] reasonably believed he was in imminent danger of death or serious bodily injury when he was surrounded by the decedent's friends and family, leading the decedent to attack [DePaz] and hit him in his head with a glass bottle; [DePaz] felt it was necessary to use deadly force against the decedent to prevent such harm, and was not the aggressor and free from fault in provoking attack which culminated in the slaying; he also did not violate any duty to retreat as he went into the kitchen to leave the premise[s] however there was no way out other than the front door, credible evidence the Commonwealth did not disprove beyond a reasonable doubt.

II. The trial [c]ourt abused its discretion by sentencing [DePaz] to a maximum sentence of 2 ½ to five years on the PIC (M1) charge to run consecutive to the six to twelve years sentence for Involuntary Manslaughter (F1) as the [c]ourt did not take into consideration, [DePaz's] lack of violent history, his mitigating factors such as his difficult childhood, and his rehabilitation post incident where he spent 22 months in custody, and very favorable mitigating testimony from the decedent's father-in-law and Uncle who were Commonwealth witnesses at trial. The sentence failed to follow the dictates of 42 Pa.C.S.A. § 9721(b) requiring the court to at least consider the circumstances of the offense and the character of the defendant, acknowledged the sentencing guidelines as a perfunctory exercise and focused exclusively on the victim and crime.

DePaz's Br. at 7.

DePaz claims that the Commonwealth presented insufficient evidence to disprove his claim of self-defense. He maintains that he reasonably believed he needed to stab the victim to protect himself. He also claims it is undisputed that the victim was the aggressor. He stresses his testimony that he tried to leave the home, but the only exit was through the front door. He further

argues that "[t]he force used was not more than necessary as he only stabbed the decedent once[.]" *Id.* at 16.

A sufficiency claim raises a question of law. "When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Clemens*, 242 A.3d 659, 664 (Pa.Super. 2020) (internal quotation marks and citation omitted). "In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* at 665 (citation omitted). The fact finder is free to believe all, part, or none of the evidence presented. *See Commonwealth v. Snyder*, 870 A.2d 336, 350 (Pa.Super. 2005). The Commonwealth may meet its burden through wholly circumstantial evidence and "need not preclude every possibility of innocence." *Id.* (citation omitted).

The Commonwealth presents sufficient evidence of voluntary manslaughter – unjustifiable belief where it establishes that the defendant "intentionally or knowingly kills an individual" and "believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable." 18 Pa.C.S.A. § 2503(b). "The affirmative defense of self-defense, if accepted, results in an acquittal because it constitutes a

justification for the conduct charged." **_Commonwealth v. Mouzon_**, 53 A.3d 738, 744 n.5 (Pa. 2012) (citation omitted).

When deadly force is used, a self-defense claim arises where there is evidence that:

> 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly [force] to prevent such harm;
>
> 2) the defendant did not provoke the threat that resulted in the slaying; and
>
> 3) the defendant did not violate a duty to retreat.

**_Commonwealth v. Green_**, 273 A.3d 1080, 1084 (Pa.Super. 2022), _appeal denied_, 289 A.3d 522 (Pa. 2022) (citation omitted) (alteration in original); **_see also_** 18 Pa.C.S.A. § 505 ("Use of force in self-protection"). "[T]he use of deadly force itself 'cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant] acting in responsive self-defense.'" **_Commonwealth v. Smith_**, 97 A.3d 782, 787–88 (Pa.Super. 2014) (quoting **_Mouzon_**, 53 A.3d at 751) (alteration in original). Rather, the defendant must be blameless "in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force." **_Id._** at 788 (emphasis removed).

Once there is evidence from any source that would support a finding of self-defense, "the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of [the] three elements [of self-defense] is absent." **_Commonwealth v. Jones_**, 271

A.3d 452, 458 (Pa.Super. 2021); *see also Commonwealth v. Brockington*, 230 A.3d 1209, 1213-14 (Pa.Super. 2020) (stating "[a] defendant does not have the burden to prove a claim of self-defense" but instead may introduce evidence "to justify a finding of self-defense"). "The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger." *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (citation omitted) (alterations in original).

DePaz's claim is meritless. Viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth sufficiently met its burden to disprove DePaz's self-defense claim. Reyes testified that after the victim struck DePaz with a Corona bottle, DePaz went from the living room, through the dining room, and into the kitchen. Reyes also testified that DePaz was "in and out" of the kitchen. N.T., Trial, at 56. After exiting the kitchen with a knife, DePaz told Reyes to "stay out of the way," and then proceeded to stab the victim. *Id.* at 31, 33.

Additionally, the trial court, as fact-finder, was free to believe all, part, or none of DePaz's testimony that he tried to leave the home through the kitchen before stabbing the victim. In its opinion, the court pointed out that

"it was obvious that DePaz could have left the scene without the need to go into another room, retrieve a knife and return to stab and kill the decedent." Rule 1925(a) Opinion, filed 7/7/23, at 2. No relief is due.

In his second issue, DePaz claims that the court failed to consider his mitigating factors and imposed a sentence that solely focused on the victim and the crime. This argument goes to the discretionary aspects of sentence, for which there is no absolute right of appeal. *See Commonwealth v. Radecki*, 180 A.3d 441, 467 (Pa.Super. 2018). Rather, we must consider whether DePaz: 1) filed a timely notice of appeal; 2) preserved his claim at the sentencing hearing or in a post-sentence motion; 3) included a Rule 2119(f) statement in his brief; and 4) raised a substantial question that his sentence "inconsistent with a specific provision of the Sentencing Code" or "contrary to the fundamental norms which underlie the sentencing process." *Id.* at 467, 468 (citation omitted).

Furthermore, sentencing is a matter of the trial court's discretion. An abuse of discretion exists only where "the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Moury*, 992 A.2d 162, 169–70 (Pa.Super. 2010) (citation omitted). A failure to raise a sentencing claim at the sentencing hearing or in a post-sentence motion will result in a waiver of the claim. *See id.* at 170.

We do not address the merits of DePaz's sentencing claim because he failed to raise it before the trial court. In his post-sentence motion, DePaz argued that the court imposed an excessive sentence and disregarded the

Sentencing Guidelines by imposing a consecutive maximum sentence for PIC. However, before this Court, he claims that the trial court failed to consider his mitigating factors and focused solely on the victim and the crime. This claim is therefore waived. ***See id.*** We thus affirm.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2024