J-S19023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ADRIAN MCCALL | |
| Appellant | No. 2277 EDA 2014 |

Appeal from the Judgment of Sentence June 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006747-2012

BEFORE: STABILE, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 10, 2015**

In this direct appeal, Adrian McCall challenges the weight of the evidence underlying his conviction for third degree murder[1] and the sufficiency of the evidence underlying his conviction for possession of an instrument of crime ("PIC").[2] Finding no merit in these arguments, we affirm.

We begin by summarizing the relevant procedural history. A jury found McCall guilty of third degree murder and PIC. The trial court severed the charge of possession of firearms by prohibited person ("possession by

_____

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 907.

prohibited persons").[3]  Following the jury verdict, the court, sitting non-jury, found McCall guilty of possession by prohibited persons.  McCall did not appeal his conviction for this offense.  On June 16, 2014, the trial court sentenced McCall to consecutive terms of imprisonment of 20-40 years for third degree murder, 4½-10 years for possession by prohibited persons, and 1-2 years for PIC, an aggregate sentence of 25½-52 years' imprisonment.

On June 26, 2014, McCall filed a timely post-sentence motion, which the trial court denied on July 8, 2014.  On August 6, 2014, McCall filed a timely notice of appeal. On August 11, 2014, the trial court ordered McCall to submit a Pa.R.A.P. 1925(b) statement. On September 11, 2014, McCall filed an untimely statement. On September 25, 2014, McCall filed a motion to reinstate appeal rights *nunc pro tunc*.  On September 26, 2014, the trial court granted defendant's motion and accepted his Pa.R.A.P. 1925(b) statement as timely filed.  On October 6, 2014, the trial court filed a Pa.R.A.P. 1925(a) opinion.

The trial court accurately summarized the evidence adduced during trial as follows:

> On February 6, 2012, at approximately 10:20 a.m., Annie May Hollomon and her neighbor, Lonnie Workman, were having a conversation outside on the 5500 block of Blakemore Street. During their conversation, Desmond Jones drove down the block

---

[3] 18 Pa.C.S. § 6105.

with his girlfriend, Nekisha Dotson. Jones stopped his vehicle in the middle of the street and waited for his mother, Stephanie Jones, to come out of her home at 5558 Blakemore Street. Workman approached the vehicle and began speaking to Desmond Jones through the car window. Workman explained to Jones that although he had a problem with Jones['] cousin, defendant Adrian McCall, Workman did not have a problem with Jones. N.T. 2/25/14 at 50-57; N.T. 2/26/14 at 161, 182, 218.

While Workman and Jones were speaking, [McCall] walked out of his home at 5558 Blakemore Street. [McCall] and Workman began to argue. Workman invited [McCall] to box telling [McCall] to 'come on down off of those steps' and threatening to 'whip [his] ass.' [McCall] pulled a silver gun from his waistband and showed it to Workman, who said 'I ain't scared of no gun.' At the time, [McCall] was standing on the top step of his porch about seven to eight feet away from Workman. Workman turned his head to the side to spit when [McCall] fired at least four shots at Workman, striking him once in the abdomen. [McCall] then ran inside his house. Workman fell on the sidewalk where he was standing. Holloman called 911 after which the police arrived and transported Workman to Albert Einstein Medical Center. N.T. 2/25/14 at 57-73, 83, 117-119; N.T. 2/26/14 at 12, 93-94, 189-198, 229, 247.

On February 6, 2012, at 11:18 a.m., Workman was pronounced dead. According to Dr. Marlon Osbourne, the Assistant Medical Examiner, Workman suffered a gunshot wound to the left side of his mid to lower back which hit the small intestines, lacerated the left common iliac artery, and lodged in the pelvic cavity. Workman also suffered abrasions and lacerations to his chest, thighs, and legs caused by fragments from a projectile. N.T. 2/26/14 at 7, 12-19, 24-25.

There were five witnesses present on the 5500 block of Blakemore Street at the time of the shooting, all of whom provided formal statements to Philadelphia Police Officers within days of the incident. Hollomon,

Dotson, Davis and Desmond Jones stated that they observed the shooting and identified [McCall] as the shooter. Stephanie Jones said she heard a gunshot but did not witness the shooting. At trial, Davis, Dotson and Desmond Jones contradicted their statements to police and testified that they did not witness the shooting. N.T. 2/25/14 at 75-83; N.T. 2/26/14 at 44, 78, 106, 190, 197, 201-204, 208, 260-266, 280, 285, 293, 300-301.

According to Taleta Davis and Crystal Fanis, Workman had a problem with [McCall] because [McCall] stole an Xbox from Workman's friend in December of 2011; they had recently been fighting about it. N.T. 2/25/14 at 168-171; N.T. 2/26/14 at 112. Police Officer Gary Guaraldo of the Philadelphia Crime Scene Unit recovered one .38/.357 caliber bullet jacket from the scene. The medical examiner recovered one bullet jacket fragment from the victim's clothing, caliber indeterminable, and one .38/.357 caliber bullet from the victim's body. According to Officer Welsh, an expert in firearms identification, these bullets displayed insufficient corresponding markings to determine whether or not they were fired from the same gun. N.T. 2/25/14 at 187-189, 204, 229-238.

On February 6, 2012, Detective Crone obtained an arrest warrant for [McCall]. On February 24, 2012, at approximately 3:10 p.m., Officer Lovina and Officer Rodriguez arrested [McCall] on the 6300 block of Theodore Street in Southwest Philadelphia. N.T. 2/27/14 at 30.

Pa.R.A.P. 1925(a) Opinion, pp. 2-4.

McCall raises two issues in this appeal: (1) whether his conviction for third degree murder is supported by the weight of the evidence, and (2) whether the evidence was sufficient to prove that he possessed an instrument of crime with intent to employ it criminally.

The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1273–74 (Pa.Super.2005). A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa.Super.2007). Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id*.

On appeal, "our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa.Super.2012). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Forbes*, 867 A.2d at 1273–74.

McCall contends that the weight of the evidence shows that he was justified in using deadly force. We disagree. The use of deadly force is justified only if the actor reasonably believes it is necessary to protect

himself from, *inter alia*, death or serious bodily injury. 18 Pa.C.S. § 505(b)(2);[4] ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa.2012). The Commonwealth may defeat defendant's claim of self-defense by proving either that the "slayer was not free from fault in provoking … the difficulty which resulted in the slaying or that the slayer's belief that he was in "imminent danger of death or great bodily harm" was unreasonable. ***Sepulveda***, 55 A.3d at 1124; 18 Pa.C.S. § 505(b)(2)(i). Verbal taunts do not constitute a reasonable basis for shooting someone to death. ***Commonwealth v. Mouzon***, 53 A.3d 738, 751 (Pa.2012).

Here, the trial court acted within its direction in denying McCall's challenge to the weight of the evidence. The Commonwealth introduced credible evidence showing McCall provoked the confrontation. The victim, while standing on the street, did not notice McCall standing on his porch. N.T. 2/25/2014, p. 64. It was not until McCall retrieved the murder weapon from inside his house and said "something smart" to the victim that an argument began. ***Id***. at 57, 65. Given this testimony, the trial court properly found that McCall was not "free from fault." ***Sepulveda***, 55 A.3d at 1124.

---

[4] Although the legislature amended section 505 in 2011, the amendments are not relevant to this case. Neither the former version of section 505 nor the present version permit the use of deadly force where, as in this case, there is no reasonable belief of imminent danger and therefore no necessity to resort to deadly force.

Additionally, the trial court acted within its discretion by concluding that McCall did not reasonably believe he was in imminent danger of serious bodily injury or death. **Commonwealth v. Smith**, 97 A.3d 782, 787 (Pa.Super.2014). The "imminent danger" test requires the trial court to consider both subjective and objective factors. Subjectively, a claim of self-defense cannot succeed unless the defendant "acted out of an honest, *bona fide* belief that he was in imminent danger." **Id**. In determining the objective reasonableness of the use of deadly force, the trial court considers "whether [the victim] was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of the [victim] and general circumstances surrounding the incident." **Id**. at 788.

Here, McCall did not shoot the victim to protect himself from injury — he was settling an old score. Shortly before the murder, McCall stated that he was "getting tired of that bigheaded, light-skinned pussy in the middle of the block on Blakemore," and that McCall was going to "fuck [the victim] up." N.T. 2/25/2014, p. 143. These words showed that McCall planned to bring his verbal feud with the victim to a violent end. Moreover, during the confrontation, McCall did not act like he believed he was in danger of imminent bodily injury or death. He never tried to take shelter in his house or call for help. Instead, he pulled out a gun, shot the unarmed victim, and fled. Even if McCall subjectively believed he was in imminent danger of

serious bodily injury or death, this belief was not objectively reasonable. The victim was unarmed. N.T. 2/25/2014, p. 70; N.T., 2/26/2014, p. 95. A flight of stairs separated McCall from the victim. N.T. 2/25/2014, p. 70. McCall initiated the confrontation. N.T. 2/25/2014, 57, 137-38). Although some evidence suggests that the victim was larger than McCall, the fact remains that the victim was not physically menacing McCall. N.T. 2/25/2014, p. 70). At most, he was verbally taunting him, which is not sufficient provocation for the use of deadly force. *Mouzon*, 53 A.3d at 751. In fact, eyewitness testimony indicates that not only was McCall on his porch and the victim on the sidewalk, but the victim had physically turned away when McCall shot him. N.T. 2/25/2014, p. 58. The medical examiner's testimony corroborates this conclusion. The bullet entered the victim at a downward angle on the left, rear part of his abdomen. N.T. 2/26/2014, p. 19.

For these reasons, we reject McCall's challenge to the weight of the evidence underlying his conviction for third degree murder.

McCall next contends that the evidence was insufficient to support his conviction for PIC. We disagree. Our standard of review for challenges to the sufficiency of the evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not

- 8 -

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted).

18 Pa.C.S. § 907 provides: "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." McCall argues that the evidence is insufficient to demonstrate the element of intent to employ the gun criminally against the victim. He argues in his brief that he merely acted in self-defense. The evidence summarized above demonstrates, however, that McCall brutally and maliciously shot the unarmed victim in cold blood, and that he did not act in self-defense. Accordingly, McCall's challenge to the sufficiency of the evidence is devoid of merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015

- 9 -