J-S03026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON JOSEPH TAYLOR | : | |
| | : | |
| Appellant | : | No. 956 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 31, 2019
In the Court of Common Pleas of Forest County Criminal Division at
No(s): CP-27-CR-0000099-2018

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.:

**FILED FEBRUARY 28, 2020**

Because the Commonwealth failed to offer sufficient evidence to disprove beyond a reasonable doubt Appellant's claim of self-defense, and I would hold that Appellant acted reasonably in response to the victim's ongoing aggression, I respectfully dissent.

In this case, there is no dispute that the victim and Appellant were engaged in an argument, that the victim twice had to be restrained from physically attacking Appellant, and that the victim followed Appellant to his car and attacked him once more after Appellant stated that he was going to

_____

[*] Retired Senior Judge assigned to the Superior Court.

get his gun. When Appellant said that he was going to get his gun, the victim responded, "You better, mother fucker, because I have my .45."[1] Notes of Testimony, 4/10/19, at 295-96. The victim had, in fact, brought a gun with him to the camp, but it was locked in the trunk of a friend's car for most of the weekend. Both individuals were heavily intoxicated during the incident, and on the previous night, the victim had gotten into a physical fight with another partygoer that had to be broken up by their friends.[2]

The Commonwealth presented additional testimony from Ryan Yunk (Yunk), one of the other guests at the cabin, who saw the altercation leading to the shooting. When Yunk learned that the victim had followed Appellant to his car, he walked over to the driveway and saw the two men standing together. Yunk testified that they were "locked up," "[l]ike, wrestling, like had each other grabbed up with their arms." *Id.* at 253. As Yunk began to walk toward them to break up the fight, he saw "[Appellant] push [the victim] back, and raise up his arm and fired." *Id.* Appellant, testifying on his own behalf, explained that he saw the victim rushing at him and swinging his fists in the dark, and the victim continued to swing and hit him on the arm while Appellant

_____

[1] The victim testified that he does not recall either part of this exchange. Notes of Testimony, 4/10/19, at 211. However, both Appellant and Ryan Yunk testified that he made the statement. *Id.* at 251, 295-96.

[2] I also note that at the time of the incident, Appellant was in his 50s and the victim was in his early 30s. Appellant also testified that he had two pinched nerves in his back that caused numbness in his hip and foot. *Id.* at 294.

yelled at him to stop. *Id.* at 298-99. Appellant was scared and did not know whether the victim had a gun, so he fired a single shot in his direction. *Id.*

Appellant's actions immediately after the shooting are also relevant to my analysis of his self-defense claim. Appellant testified that he fired a single shot, without taking aim, hoping that if the shot did not hit the victim, it would at least scare him away. *Id.* at 320. When Appellant saw that he had hit the victim, he immediately walked back to the camp, told the other visitors that he had shot the victim, and asked them to call for help. *Id.* at 299-300. He secured the gun inside the camp and came outside to wait for law enforcement. *Id.* at 300. When it seemed as if it was taking too long for an ambulance to arrive, Appellant called 911 himself to request assistance. *Id.* at 301. Two responding officers testified that Appellant immediately admitted that he had shot the victim, stated that he had done so in self-defense, and cooperated fully with the ensuing investigation. *Id.* at 115, 153. Notably, the victim's testimony regarding the shooting and the events preceding it largely mirrors Appellant's.

The law regarding self-defense as a justification for the use of force is well established in our Crimes Code. "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Further, when a defendant raises self-defense after using deadly force,

it must be shown that a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 665 A.2d 1172, 1174 (Pa. 1995); 18 Pa.C.S. § 505(b)(2). When a defendant raises self-defense, and there is some evidence introduced to justify such a finding, the Commonwealth bears the burden of disproving the defense beyond a reasonable doubt. *Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012).

In determining whether a defendant was at fault in provoking the altercation, we examine the full totality of the circumstances and all interactions leading to the physical confrontation, not merely the moments immediately preceding the incident. *Mouzon*, *supra*, at 751, 753. Further, a defendant may not use deadly force in self-defense if he, "**with the intent of causing death or serious bodily injury**, provoked the use of force against himself in the same encounter." 18 Pa.C.S. § 505(b)(2)(i); *Commonwealth v. Samuels*, 590 A.2d 1245, 1248 (Pa. 1991) ("In order to establish that an actor was the aggressor or provoker and, hence, was not entitled to claim a defense of self-defense or defense of others, there must be some evidence to support the inference that the defendant's acts constituted 'an intent to cause death or serious bodily injury.'"). Therefore, it is not

enough to show only that the defendant provoked the victim's use of force; he must also have done so with the requisite intent.

In **Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001), our Supreme Court held that the Commonwealth had failed to disprove self-defense when the defendant's uncontested testimony at trial established only that he responded to provocation by the victim with proportionate force. There, the defendant testified that the victim had punched him in the face, and he responded by pushing the victim away. **Id.** at 344. The victim then attempted to punch him again, so the defendant punched him, causing the victim to fall backwards and hit his head on the steps. **Id.** The victim did not testify at trial, though the officer who responded to the scene testified to the victim's hearsay statements that the defendant had struck him. **Id.** at 345.

We held that the Commonwealth did not disprove the defendant's explanation that he had acted in self-defense, particularly when there was no apparent motive for the attack and the "defense's explanation of the cause of the violence remains uncontradicted." **Id.** Further, we noted that "the Commonwealth cannot sustain its burden of proof based solely on the fact finder's disbelief of the defendant's testimony." **Id.** The Commonwealth still bore the burden of offering some evidence to disprove the defendant's claim of self-defense. **Id.**

While the victim did testify in the instant case, the facts are analogous to **Torres** in that the Commonwealth's version of events, presented through

the victim's testimony and testimony of another partygoer, was identical to Appellant's. There is no dispute regarding the events leading to the shooting; Appellant never argued that he did not throw the victim out of the camp, retrieve his gun, or shoot the victim. Similarly, the victim admitted to his aggressive behavior with both Appellant and another party-goer. Thus, much like in **Torres**, the only question that remains is whether Appellant acted out of a reasonable belief that force was necessary to prevent death or serious bodily injury. I would hold that under the circumstances, Appellant reasonably feared for his life in the moments leading to the shooting and responded to the victim's aggression with proportionate force, given the victim's size, strength and threat to use his firearm.

The Commonwealth relies on **Commonwealth v. Gillespie**, 434 A.2d 781 (Pa. Super. 1981), in support of its position that Appellant's use of force was not justified. In **Gillespie**, the victim yelled and argued with the defendant on a public sidewalk. **Id.** at 783. The defendant briefly left the scene, but returned later and argued with the victim once again. **Id.** The defendant approached the victim with his belt wrapped around his fist as a weapon. **Id.** The victim cut the defendant with a paring knife, and the defendant retrieved a baseball bat from his car and told the victim to step back. **Id.** The victim again swung his knife and cut the defendant across the midsection, so the defendant struck the victim on the head twice with "heavy and severe blows." **Id.** While the victim was unconscious on the ground, the

defendant kicked him in the head. *Id.* We held that the Commonwealth had disproved self-defense on three bases: first, the jury could conclude that the defendant was the aggressor; second, the defendant did not retreat, despite opportunity to do so; and third, the jury could have concluded that the defendant used more force than was reasonably necessary to protect himself, as the victim had been disabled by the first blow. *Id.* at 784.

Here, the evidence differs in all three respects. First, both the victim and Appellant testified that the victim repeatedly attacked Appellant before the shooting and other partygoers had to restrain the victim. While Appellant initially removed the victim from the camp and told him to sleep on the porch, there is no evidence that he engaged in any physical aggression beyond removing the victim from the camp before the victim attacked him. The two continued to argue on the porch, but there was no testimony that Appellant initiated any further physical contact with the victim. Further, even if removing the victim from the camp or going to the truck to retrieve his gun could be considered provocation, these actions only negate self-defense when taken "with the intent of causing death or serious bodily injury." 18 Pa.C.S. § 505(b)(2)(i); *Samuels*, *supra*. At best, the evidence showed that Appellant took these actions to distance himself from the victim, not to intentionally cause death or serious bodily injury.

Second, by the time Appellant fired the single gunshot, he was already entangled in a physical fight with the victim. The victim had stated that he

had a gun, and Appellant was rightfully afraid that the victim had the gun with him. The victim had, for the third time, charged at Appellant, this time swinging his fists. There were no other visitors in the area to break up the fight. The victim's actions prevented Appellant from retreating back inside the camp or to his vehicle.[3] Appellant's testimony, corroborated by the Commonwealth's witness, Yunk, indicated that Appellant only chose to fire the weapon when they were in the midst of a struggle and he had been physically attacked for the third time by the victim. At that point, Appellant was unable to retreat. The facts of this case then are more like *Torres* than *Gillespie*, as Appellant responded in the midst of an attack initiated by the victim and did not prolong the encounter beyond what was necessary to end it.

Third, Appellant fired a single gunshot at the victim and then immediately fled back to the camp to seek help. He did not fire any additional shots or physically attack the victim after the victim had already been subdued and no longer presented a threat. In *Torres*, our Supreme Court held under similar circumstances that the Commonwealth had not disproved self-defense when the defendant merely responded to the victim's physical aggression. Appellant, believing the victim had his firearm and in the midst of a physical

---

[3] I reject the Commonwealth's assertion that Appellant, despite being heavily intoxicated at the time, should have driven down the driveway and away from the camp that his family owned in retreat. *See* Commonwealth's Brief at 12-13. Driving under the influence is no less dangerous for the driver when on a private driveway as opposed to a public roadway.

struggle, fired one shot to end the altercation before immediately seeking help from the other visitors and law enforcement. Unlike the defendant in **Gillespie**, Appellant did not inflict any additional harm after his attacker was subdued.

Finally, Appellant's actions immediately after firing the shot corroborate his claim of self-defense. He returned to the camp, secured his weapon inside, and asked the other visitors to call for help. He called 911 himself when he felt that they were not responding quickly enough. Once the state troopers arrived, Appellant immediately admitted to the officers that he was the shooter and told them he had shot the victim in self-defense. He was cooperative with officers throughout the investigation, directing them to where they could find his gun and giving a voluntary statement on his version of events. His actions were entirely consistent with an individual who made a decision in the heat of the moment to protect his life, but did not intend to inflict any more harm than was strictly necessary to do so. Based on these facts, I would hold that the Commonwealth did not disprove his claim of self-defense beyond a reasonable doubt and vacate his convictions.

Accordingly, I respectfully dissent.