J-S14023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL D. COPLEY | : | |
| | : | |
| Appellant | : | No. 395 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 28, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000150-2019

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  July 25, 2023**

Appellant's wife was reported missing in December of 2015 and her body was discovered in a garage in June of 2016.  Following a two-year investigation, Appellant was arrested and ultimately convicted of, *inter alia*, homicide in the third degree for her murder.  Appellant raises three claims on appeal from his judgment of sentence of 26.5 to 57 years of incarceration.  We affirm.

The trial court opinion does not contain a factual recitation and Appellant's statement of the case does not offer any factual history.  ***But see*** Pa.R.A.P. 2117(a)(4) (stating that the statement of the case shall contain "[a] closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in

_____

[*] Retired Senior Judge assigned to the Superior Court.

controversy" with appropriate citations to the record). As Appellant's challenges do not depend on the validity of any inferences drawn from the Commonwealth's evidence, we offer a short summary of the essential facts.

On June 8, 2016, the decomposing body of Catherine Copley was found in the detached garage of a home in Altoona. Mrs. Copley's mother had reported her missing on December 13, 2015, while Appellant had already reported Mrs. Copley missing shortly after midnight on December 11, 2015.

The evidence established that on the evening of December 9, 2015, the Copleys had friends over to drink. Mrs. Copley and some other guests decided to get some marijuana for the group to smoke from Dustin Salyard, who lived approximately a half mile from the Copley residence. They returned sometime after 1 a.m., and the party continued. Mrs. Copley went missing the next day.

On December 17, 2015, Appellant called the police to report that he saw one of Mrs. Copley's shoes in Salyard's backyard. Salyard consented to a search of his home; no other evidence was found. Following the discovery of Mrs. Copley's body, the matching shoe was discovered adjacent to her corpse. DNA testing established that Appellant's DNA was present on the shoe found in Salyard's yard, while Salyard's and Mrs. Copley's were not. Furthermore, Appellant's DNA was under Mrs. Copley's fingernails.

The Commonwealth's theory was that Appellant killed his wife and planted the shoe in Salyard's yard in an attempt to pin the crime on him. The Commonwealth presented evidence of marital strife between the Copleys. The Commonwealth obtained cell phone records demonstrating that Appellant had

accused his wife of having sex with Dustin Salyard in exchange for marijuana, an accusation confirmed by cell phone extractions of Mrs. Copley's phone. Other witnesses testified that Appellant had made angry comments about his wife's infidelities.

Additionally, Appellant gave several statements to police officers that were contradicted by the foregoing testimony. Particularly, Appellant claimed that their marriage was untroubled and that he was unaware of Mrs. Copley's affair with Salyard until after her disappearance. He also appeared nonchalant about his wife's whereabouts in the months preceding her body's discovery, and did not participate in her funeral arrangements. Appellant was also observed tearing down a "missing person" poster asking for information.

Locational data extracted from Appellant's phone indicated that it had connected to a tower near the garage on the night of her disappearance. That garage and its home were vacant, as the homeowner had died several years before. The home was listed for sale by the county to pay taxes. Stephen Little, a friend of the Copleys, testified that Appellant and Mrs. Copley had discussed purchasing the property.

Following a five-day jury trial, Appellant was convicted of, *inter alia*, homicide in the third degree and burglary, and sentenced as previously stated. He filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court authored its responsive opinion and the matter is ready for review of the three questions Appellant presents for our review:

I. Did the Commonwealth present sufficient evidence to support … Appellant's conviction for burglary?

II. Did the trial court err in permitting the Commonwealth to present various photographs of the decedent which only served to inflame the passions of the jury?

III. Did the trial court err in permitting the Commonwealth to elicit testimony from the funeral director regarding the circumstances of decedent's funeral arrangements?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant's first issue challenges the sufficiency of the evidence to support his burglary conviction. Appellant maintains that the Commonwealth failed to establish that the garage was not "abandoned," which is a statutory defense to burglary. We conclude that Appellant waived this issue by failing to raise that defense at trial.

The Commonwealth charged Appellant with violating the following subsection of the burglary statute:

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

. . . .

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

18 Pa.C.S. § 3502(a)(2).

Abandonment is one of three statutory defenses codified within subsection (b):

**(b) Defense.--**It is a defense to prosecution for burglary if any of the following exists at the time of the commission of the offense:

- 4 -

(1) The building or structure was abandoned.

(2) The premises are open to the public.

(3) The actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(b).

Abandonment being a defense is significant in that it speaks to whether the Commonwealth is required to disprove that element beyond a reasonable doubt as part of its case-in-chief. Difficult interpretive questions can arise when the statutory text defining the crime contains an "exception." An example of this is Section 6106(a) of the Pennsylvania Uniform Firearms Act of 1995. In **Commonwealth v. Lopez**, 565 A.2d 437 (Pa. 1989), our Supreme Court examined the following statutory language: "No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter…." **Id.** at 439 (quoting statute).[1] The "except in his place of abode or fixed place of business" language was deemed an element of the offense. "This clause is clearly an integral part of the forbidden conduct found in the definition of the offense. The Commonwealth cannot successfully prove a violation of section 6106 without showing that the gun, found on the person, was carried outside the place of abode." **Id.** In contrast, subsection (b) of that statute, which remains defined as "Exceptions," are

---

[1] The statutory language today states: "Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106.

"affirmative defenses, which must be placed in issue by the defendant, and which need not be negated by the prosecutor in its case-in-chief." *Id.* at 440. "Under the rules of statutory construction, subsection (b) clearly evidences a distinction between the definition of the crime and its exceptions." *Id.*

Turning to the crime of burglary, subsection (b), entitled "Defense," clearly evidences a statutory distinction between the definition of the crime and its defenses. There is thus no question that the Commonwealth is not required to establish beyond a reasonable doubt that the building is not abandoned (or that the premises were not open to the public or that the actor was not privileged to enter). Those are defenses, which must be put into issue by Appellant. He failed to do so.

Appellant recognizes that abandonment is a defense, arguing that "once an affirmative defense has been raised, in any proper manner, the Commonwealth must present evidence beyond a reasonable doubt to refute same." Appellant's Brief at 13-14 (citing *Commonwealth v. Mouzon*, 53 A.3d 738 (Pa. 2012)). Appellant submits that whether the garage was "abandoned" was put into issue from several sources, beginning with Commonwealth witness Jason Keith, who discovered Mrs. Copley's body. Mr. Keith testified that the homeowner had died within the last "year or two[,] within that time frame" and, in response to the Commonwealth's question, "So the property was abandoned?[,]" he answered, "Yeah." N.T., 8/3/21, at 74. Appellant also points out that the Commonwealth in its opening and

closing arguments referred to the garage as abandoned.[2]  Additionally, the coroner testified that her husband's cousin happened to own the home, and that he had passed away on February 9, 2014, with the home remaining vacant. *Id.* at 135.

It is true that defendants may raise affirmative defenses when evidence supporting the defense is introduced by any source. *Commonwealth v. Alvarez-Herrera*, 35 A.3d 1216, 1219 (Pa. Super. 2011) ("An affirmative defense may be introduced from any source, Commonwealth or defense."). However, we disagree that the defense of abandonment can be raised implicitly.  Defenses must either be disproven beyond a reasonable doubt by the Commonwealth, or the defendant bears the burden of establishing it by a preponderance of the evidence.[3]  In both cases, the fundamental point remains that the issue must be raised.  This ensures that the parties are aware of the need to establish (or rebut) the defense.  In turn, this enables the fact-

_____

[2] Appellant also cites the fact that the Commonwealth withdrew the charge of criminal trespass during trial, informing the trial court that it could not overcome the abandonment issue.  Because abandonment is a statutory defense to criminal trespass as well as burglary, Appellant submits that the Commonwealth conceded that the defense applied.  It is not clear why the Commonwealth withdrew that charge.  Nevertheless, the Commonwealth's legal conclusion does not bind this Court, as even an actual concession of error "is not a substitute for independent judicial review." *Commonwealth v. Brown*, 196 A.3d 130, 146 (Pa. 2018). *See also Commonwealth v. Perrin*, 291 A.3d 337 (Pa. 2023) (concluding that the trial court did not have to accept a joint stipulation by the parties to a witness's credibility).

[3] There does not appear to be any decision from our appellate courts addressing who bears the burden once a Section 3502(b) defense is raised.

finder to determine the issue. As the trial court noted, the jury was never instructed to decide whether the garage was abandoned. Trial Court Opinion ("TCO"), 6/1/22, at 5 ("It also appears that there was no request for any jury instruction on the factual question of abandonment."). That is directly attributable to Appellant's failure to adequately raise the defense. *Id.* ("This [c]ourt questions whether … [Appellant] has waived this issue. … [T]his [c]ourt's review of the record … leads this [c]ourt to the conclusion that [Appellant] did not raise the defense of abandonment at trial."). We therefore conclude that Appellant did not adequately place the defense at issue during trial, rendering this claim waived. *See Commonwealth v. Wanner*, 158 A.3d 714, 717 (Pa. Super. 2017) ("[The a]ppellant avers that there is a statutory affirmative defense to Defiant Trespass that is applicable in the instant case. [The a]ppellant waived this claim by failing to raise it before the trial court and preserve it in her Pa.R.A.P. 1925(b) Statement.") (footnote and citation omitted).[4]

_____

[4] Had Appellant not waived his abandonment claim, we would be unpersuaded, based on the record before us, by the Commonwealth's argument that it successfully established the inapplicability of the defense beyond a reasonable doubt. The Commonwealth argues that the evidence established that the building was not abandoned, citing *Commonwealth v. Henderson*, 419 A.2d 1366 (Pa. Super. 1980), where this Court held that the General Assembly intended "abandon" to track the dictionary definition meaning of "wholly forsaken or deserted." *Id.* *Henderson* involved the defendant's entering a building that was up for sale. In that case, we concluded in short order that "under the evidence there was no abandonment of the building or structure." *Id.* Here, the Commonwealth cites *Henderson* as proof that the garage here

*(Footnote Continued Next Page)*

Turning to Appellant's second issue, we conclude that this claim has also been waived. This issue challenges the admission of photographs of Mrs. Copley's body. The standards governing the admission of post-mortem photographs is well-settled:

> Photographs of a murder victim are not *per se* inadmissible…. The admission of such photographs is a matter within the discretion of

_____

was not abandoned because the home, like the building in **Henderson**, was up for sale. However, the similarities end there. In **Henderson**,

> [t]he subject building was a seminary owned by the Christian Educational Department of the AME Zion Church. It was no longer in use but was not abandoned and was in fact up for sale and was visited by the caretaker virtually every day and by the Church's lawyer once a week. It had been out of use for only two to three months. The attorney in charge of arranging a sale and the caretaker both testified that the defendants had never been given permission to enter the building or to remove any property from the premises. Both these men also testified that when they had last visited the building shortly before the incident, there were no broken or boarded up windows, and the premises were secure.

*Id.* at 1367 (citations omitted).

We would not read **Henderson** to hold that any building which is up for sale is *per se* not abandoned. The facts in **Henderson** established that a caretaker visited the site "virtually every day" and that the property had been unused for two to three months. **Henderson** does not speak to the facts in the case *sub judice*, where the structure was apparently unused for a far lengthier time period and may or may not have been regularly maintained. This point, however, illustrates the importance of squarely raising a defense. Had Appellant directly cited the statutory defense at trial, the parties may well have anticipated presenting more facts and testimony on the issue of abandonment.

- 9 -

the trial judge. The test for determining the admissibility of such evidence requires that the court employ a two-step analysis. First[,] a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Mollett*, 5 A.3d 291, 301 (Pa. Super. 2010) (quoting

*Commonwealth v. Tharp*, 830 A.2d 519, 531 (Pa. 2003)).

On June 23, 2021, Appellant filed a motion *in limine* to exclude forty-three photographs taken during the autopsy and thirty-two photographs taken at the garage, all of which showed Mrs. Copley's body. The trial court ordered a hearing, which took place on July 8, 2021. There, the trial court stated that, during an off-the-record discussion with counsel, the Commonwealth had selected 85 photographs out of approximately 300 total that it intended to present at trial, including "approximately twenty … that don't depict the decedent at all." N.T. Motion to Suppress, 7/8/21, at 21. The trial court proposed that the Commonwealth offer "argument as to why they believe the photographs are relevant and admissible. We would then provide [Appellant] until close of business Monday to file of record specific objections to the 85 photographs." *Id.* at 2. The parties agreed with this plan, and they proceeded to discuss, in detail, what each photograph showed and its assertions of their evidentiary value. *See id.* at 4-22.

Appellant filed his objections on July 12, 2021, discussing each photograph. Appellant conceded that several of the photographs were

- 10 -

admissible, and further agreed to withdraw objections to others if the Commonwealth edited the photographs to crop certain features and/or modify color photographs to black and white.

The trial court issued a ruling on July 26, 2021, granting the motion to exclude eight photographs and conditionally allowing all others, assuming the Commonwealth could establish their relevance at trial. Appellant now argues that the trial court erred in allowing the introduction of "[six] photographs of the decedent's arms and hands taken during the autopsy." Appellant's Brief at 17 (citing slides sixteen through twenty-one). These six photographs were introduced during testimony about swabbing Mrs. Copley's fingernails for DNA. Appellant also challenges the admission of "multiple photographs of the decedent taken shortly after her body was found." *Id.* at 17-18 (citing slides 32, 35, 36, 37, and 39). These were introduced through the testimony of Pennsylvania State Police Trooper Charles Stitt. Appellant argues:

> [T]he photographs at issue in the present case were such that they should be considered inflammatory in that their effect would be to cause anger or violent feelings. Therefore, it would be submitted that the trial court should have conducted an analysis to determine if such inflammatory content was outweighed by their essential evidentiary value.
>
> As it relates to the photographs presented to the jury during the testimony of Trooper Stitt, … Appellant concedes that there existed evidentiary value to the photographs to provide the jury with insight into the condition of the body at the time it was discovered. However, said evidentiary value was outwieghed [*sic*] by the inflammatory nature of the photographs and the cumulative nature of presenting multiple photographs. Moreover, it would be submitted that if the photographs were black and white[,] it would have diminished the inflammatory nature of [the] same.

As it relates to the photographs that were presented through the testimony of Dr. Land, … Appellant would submit that [the] same had little to no probative value. Therefore, the inflammatory nature of the photographs far exceeded any probative value.

*Id.* at 18-19.

This claim was not adequately preserved in Appellant's concise statement of matters complained of on appeal, wherein Appellant merely stated that "[t]he [t]rial [c]ourt erred in denying [Appellant]'s Motion … in which he sought to preclude certain photographs from being presented by the Commonwealth in that their probative value was far outweighed by the likelihood of unfairly prejudicing the jury against [Appellant]." Concise Statement, 4/28/22, at unnumbered 1, ¶ 3. The trial court's opinion responded to this claim as follows:

> This [c]ourt conducted a hearing on … [Appellant]'s Motion *in Limine* on July 8, 2021. It was at the July 8, 2021 hearing where the [c]ourt considered the parties' position on the photographs in question. During this hearing, the [c]ourt went through each and every potential photograph that was to be admitted at the time of trial. This [c]ourt heard the Commonwealth's position on the photographs and also heard … [Appellant]'s response. There was a certain level of agreement that was reached between the parties on certain photographs. At the conclusion of the hearing, there were a number of photographs that remained in dispute. This [c]ourt subsequently issued an Order on July 26, 2021[,] on … [Appellant]'s Motion *in Limine* pertaining to the photographs. In our Order of July 26, 2021, this [c]ourt granted … [Appellant]'s Motion *in Limine* as it pertained to eight photographs. We deferred ruling on the remaining photographs until the time of trial to determine if the Commonwealth could establish relevance. We also directed the Commonwealth to take reasonable measures to crop any photographs….

> This [c]ourt stands by our decision made by Order dated July 26, 2021. This [c]ourt does not believe that the photographs … actually admitted into evidence at the trial constituted

- 12 -

inflammatory photographs. In addition, this [c]ourt believes that each of the photographs admitted into evidence had evidentiary value to prove various things that the Commonwealth was attempting to prove with each photograph. The [c]ourt believes that the probative value of each photograph outweighed any prejudicial effect that the photograph may have had on … [Appellant]. This [c]ourt also notes that during our final charge to the jury, we provided a cautionary instruction to the jury concerning the photographs. This [c]ourt will not address any specific photographs and their evidentiary value because we are uncertain as to which photographs … [Appellant] is specifically taking issue with[,] as his Statement of Matters Complained of on Appeal references only "certain photographs."

TCO at 8-10.

We agree that Appellant's failure to specify which photographs the trial court erred in admitting waived his present claim. "We specifically conclude that when an appellant fails to identify in a vague Pa.R.A.P.1925(b) statement the specific issue he/she wants to raise on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in its Pa.R.A.P.1925(a) opinion." **Commonwealth v. Lemon**, 804 A.2d 34, 38 (Pa. Super. 2002). While the concise statement adequately apprised the trial court that he took issue with the introduction of photographs as a generic matter, Appellant failed to specify which photographs were, in his view, improperly admitted. Appellant's language may have been sufficient if his motion *in limine* addressed only a few photographs. But his motion and the hearing concerned dozens of photographs and, as reflected in the trial court's opinion, the parties agreed to the admission of some of these photographs, and the court further directed the Commonwealth to crop some others. Nothing in

Appellant's concise statement indicates that his complaint was limited to the specific photographs he now addresses on appeal.

While the failure to specifically describe which photographs were at issue justifies a finding of waiver, we separately conclude that Appellant has waived his present claim for failing to adequately develop his argument. Appellant's concise statement alleged that the photographs' "probative value was far outweighed by the likelihood of unfairly prejudicing the jury against [Appellant]." Concise Statement, 4/28/22, at unnumbered 1, ¶ 3.

The admission of post-mortem photos, as previously discussed, entails a two-part inquiry. The first is whether the photographs are inflammatory. If so, the "essential evidentiary value" standard applies. ***Commonwealth v. Schroth***, 388 A.2d 1034, 1036–37 (Pa. 1978) ("Normally the general rule is that testimony is admissible if it is relevant and competent. However, where the photograph possesses gruesome or inflammatory qualities likely to inflame the passions of the viewer, our cases require the application of the 'essential evidentiary value' balancing test.") (citations omitted). Appellant's brief takes it for granted that the photographs were inflammatory, but the trial court opinion explicitly disagreed with this assertion. TCO at 9 ("This [c]ourt does not believe that the photographs … constituted inflammatory photographs."). Appellant offers little argument concerning the threshold question of whether these photographs were inflammatory.

Relatedly, Appellant appeared to concede that some other photographs were properly admitted despite being inflammatory. As such, it is not clear

whether he is arguing that the photographs were improperly admitted under the two-part test or because of their cumulative nature. For instance, Appellant's objections filed after the hearing raised "[n]o objection … for [s]lides 25 and 26[,]" but he objected to "[s]lides 27, 28, 29 and 30 … as being unduly inflammatory and … cumulative of [s]lide 26." Objections, 7/12/21, at unnumbered 2 ¶¶ 11-12. At the hearing, the Commonwealth stated, "Slide 26 depicts the body as well as fluid around the body which the Commonwealth previously indicated would be necessary for Dr. Land to opine as to the extent of the decay that had occurred…." N.T. Motion to Suppress, 7/8/2021, at 8. If slides 27 through 30 are cumulative of 26, then 26 must logically be unduly inflammatory in terms of what it depicts, too. Appellant's brief alludes to this concession. **See** Appellant's Brief at 19 (arguing that the "evidentiary value was outwieghed [*sic*] by the inflammatory nature of the photographs and the cumulative nature of presenting multiple photographs"). Accordingly, Appellant's specific complaint is unclear. We will not go through each photograph and explain why each was or was not inflammatory and, if so, whether the essential evidentiary value was met in comparison to other photographs that were admitted without objection and/or whether those photographs were cumulative. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Butler**, 756 A.2d 55, 57 (Pa. Super. 2000) (brackets and quotation marks omitted).

Appellant's final issue argues that the trial court erred in allowing the testimony of Anthony Scaglione, who arranged Mrs. Copley's funeral. Appellant contends that this evidence was irrelevant and that its admission prejudiced Appellant by inflaming the jury with irrelevant details. The trial court explained why it deemed the evidence relevant:

> This [c]ourt allowed the testimony of Anthony Scaglione on day two of the five[-]day trial. While the [c]ourt allowed testimony from Mr. Scaglione, we substantially limited the Commonwealth's originally intended testimony. The substance of Mr. Scaglione's testimony was simple, straightforward, and brief. Essentially, the purpose of the Commonwealth's presentation of Mr. Scaglione was to establish that [Appellant] did not attend, nor participate in, nor pay, towards the cost of his wife's funeral. This [c]ourt notes that this testimony was coupled with other testimony at trial to establish that [Appellant] appeared to have a lack of remorse for his [w]ife's death. Several items of evidence and other corroborating testimony [were] presented to further this assertion. This [c]ourt finds that the testimony of Mr. Scaglione was relevant in light of the Commonwealth's theory of the evidence. We note that this was a circumstantial case and the specific details of the cause of death of the victim's death were in dispute. The [c]ourt allowed [Appellant]'s behavior after his [w]ife's death to be admissible in light of the specific circumstances of this case.

TCO at 11-12. We fully agree with this analysis and find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/25/2023