J-A21012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.J.M., A MINOR | : | |
| | : | |
| | : | |
| | : | No. 1279 MDA 2024 |

Appeal from the Dispositional Order Entered January 31, 2024
In the Court of Common Pleas of Luzerne County
Juvenile Division at No(s): CP-40-JV-0000283-2022

BEFORE:    PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED OCTOBER 6, 2025**

A.J.M. appeals from the dispositional order adjudicating him delinquent and in need of treatment and supervision. We affirm.

On November 28, 2022, the Commonwealth filed a written allegation against A.J.M. for of the offenses of strangulation, 18 Pa.C.S.A. § 2718(a)(1) (felony of the second degree); simple assault, 18 Pa.C.S.A. § 2701(a)(1) (misdemeanor of the second degree); recklessly endangering another person ("REAP"), 18 Pa.C.S.A. § 2705 (misdemeanor of the second degree); and harassment, 18 Pa.C.S.A. § 2709 (a)(1). On January 13, 2023, the Commonwealth filed a petition alleging delinquency against A.J.M., based on the above offenses.

---

[*] Former Justice specially assigned to the Superior Court.

On October 5, 2023, an adjudicatory hearing was held. A.J.M. was represented by private counsel during the hearing.

At the hearing, the victim testified that A.J.M. picked her up from work on August 26, 2022 at 11:00 p.m., and they went to her house. *See* N.T., 10/5/23, at 21. After sitting in the driveway talking, the victim asked A.J.M. to stay the night after she observed a bottle of liquor in the car because she did not want him to drive home drunk. *See id.* at 22. After going inside, the two talked and caught up in the victim's bedroom. *See id.* The victim's mother and stepfather were home at that time and knew that A.J.M. was there. *See id.* at 23. The victim testified that they both were drinking, talking and listening to music, but that after a certain point she could not remember the rest of the night. *See id.* The victim believed she lost recollection around 12:00 a.m. to 1 a.m. because she did not remember a phone call she had made to her sister at 2 a.m. *See id.*

When the victim woke up on August 27, 2024, at 11:00 a.m., A.J.M. was not at her house. *See id.* At that time, the victim noticed what she believed to be "hick[ie]s on my neck." *Id.* at 24. The victim then called A.J.M., recounting the phone call as follows:

> So I called him, and he answered. I asked him, what happened, why there was hickies on my neck. And he told me, now wasn't the time to talk about it and that they weren't hickies on my neck and that he choked the shit out of me because I had punched him. But, like, at that point, what he was telling me, I don't recall. I have no memory of the rest of the night after 1:00.

*Id.* at 28. The victim repeated she had assumed the marks, which were dark red and mainly on the right side only, were hickies when she woke up. *See id.* at 29. The victim testified there was also "a bruise on my leg and like a tear and a bruise on my back and marks on my inner arm" that had not been there the evening before. *Id.* The victim clarified she did not remember being in any pain when she woke up. *See id.*

Over defense objection, the court allowed the Commonwealth to admit a photograph taken by the victim of the marks on her neck, that had been submitted to the defense the morning of the hearing. Defense counsel objected to admission of the victim's recollection of the phone call under the corpus delicti rule, which places the burden on the Commonwealth to establish that a crime has actually occurred before a confession or admission or statement from a defendant is entered.

K.Y. then testified that she came in contact with A.J.M. around 3 or 4 a.m. on August 27, 2022, when A.J.M. came over to her friend's house. *See id.* at 36. K.Y. testified that A.J.M. told her he came from the victim's house. *See id.* at 37. K.Y. knew the victim but did not go to school with her or hang out with her. *See id.* K.Y. recounted her conversation with A.J.M. as follows:

> I don't remember it fully. But I remember some bits and parts of it. And he said that—like, he was at her house. And for some reason, like, he said that she started beating him like this [made a motion punching chest with both hands]. Like, he said that she got on top of him and started beating him. So he took her by the throat and pushed her down so that she would get off of him.

*Id.* at 38. K.Y. did not remember how A.J.M. had shown how he put his hand on the victim's throat, but maintained that A.J.M. told her the victim "was beating on him and showed me the way that she was doing it" and that he said he did that to get the victim off of him. *Id.* at 40-41. K.Y. never spoke to the victim prior to this incident, but did speak to her afterwards. *See id.* at 41. K.Y. did not see any bruising or redness on A.J.M.'s chest. *See id.* at 42.

Following the hearing, the juvenile court entered an order deferring a determination as to whether A.J.M. was in need of treatment, supervision or rehabilitation, and deferring a disposition as to adjudication of delinquency. The court scheduled a disposition hearing for November 21, 2023.

On November 16, 2023, A.J.M.'s private counsel filed a motion to withdraw as counsel, which the juvenile court granted on November 21, 2023. The court then appointed the Public Defender's Office to represent A.J.M. The disposition hearing was subsequently continued to January 30, 2024.

On January 31, 2024, following the disposition hearing, the juvenile court entered an order finding A.J.M. delinquent on all four charges, and in need of treatment, supervision and/or rehabilitation.

On July 8, 2024, A.J.M. filed a post-dispositional motion, raising issues related to the corpus delicti rule, his claim of self-defense, and the sufficiency of the evidence for strangulation. The juvenile court held a hearing on the motion on July 23, 2024. Following argument from both sides, the court took

the matter under advisement. On August 5, 2024, the juvenile court denied the motion. A.J.M. filed a notice of appeal on September 3, 2024.

Preliminarily, a notice of appeal must be filed within 30 days of the entry of the order being appealed. **See** Pa.R.A.P. 903(a); **see also Commonwealth v. Moir**, 766 A.2d 1253 (Pa. Super. 2000). Pennsylvania Rule of Juvenile Court Procedure 620 provides that a party shall file post-dispositional motions no later than 10 days after entry of the dispositional order. **See** Pa.R.J.C.P. 620(B)(1). A timely motion tolls the appeal period; an untimely motion does not. **See** Pa.R.J.C.P. 620(B)(2)-(3). This Court may not extend the time for filing a notice of appeal. **See** Pa.R.A.P. 105(b).

On January 13, 2025, this Court directed A.J.M. to show cause why the appeal should not be quashed as untimely filed on September 3, 2024, more than 30 days after the entry of the January 31, 2024 dispositional order. **See** Order, 1/13/25 (noting that based on the docket, the post-dispositional motion did not toll the appeal period because A.J.M. filed the motion later than 10 days after the entry of the dispositional order).

A.J.M. filed a response in which his counsel explained that he was not appointed to represent A.J.M. until January 19, 2024, following the adjudicatory hearing on November 16, 2023. Upon counsel's appointment, counsel filed a motion seeking transcripts from the adjudicatory hearing. At the dispositional hearing on January 29, 2024, counsel explained to the court that he was not counsel of record at the time of the adjudicatory hearing, that

- 5 -

he had requested transcripts of that hearing to be proactive, but was still waiting for the transcripts. **See** N.T., 1/29/24, at 13. Accordingly, counsel requested "if possible, I could do 10 days after receiving the transcript to the case" to file a post-dispositional motion. **Id.** at 13. The court responded "Yes. I will grant the opportunity to submit a post-dispositional motion, should you wish, 10 days after you receive the transcript." **Id.** at 14. The court further clarified that the extension would be noted on the dispositional order in the instant docket. **See id.** at 15. The court subsequently went over the post-dispositional rights colloquy with A.J.M. regarding three separate dockets he had before the court. The court noted that A.J.M. had 10 days to file a post-dispositional motion, but distinguished the instant docket, stating "[i]n the case of docket 283 of 2022, 10 days from the receipt of the transcript that Attorney Fernandez has requested." **Id.** at 16. A.J.M. affirmed his understanding of these rights.

Notably, the dispositional order does include the following note: "Attorney Fernandez granted 10 days, extension after receipt of transcript in 283-2022 for post dispositional filings." Adjudication/Disposition Hearing Order, 1/31/24, at 5.

In his post-dispositional motion filed on July 8, 2024, A.J.M. included the above information, and noted that he did not receive the transcripts until June 26, 2024, seemingly due to a clerical issue at the court stenographer's office. **See** Juvenile's Post-Dispositional Motion, 7/8/24, at 1. In its opinion,

- 6 -

the juvenile court affirmed this "[a]dditional delay occurred due to a unique waiting period in receipt of the transcript due to a clerical issue within the Court Stenographer's Office." Trial Court Opinion, 11/4/24, at FN2. A.J.M. filed the post-dispositional motion 10 days after receiving the transcripts.[1]

We note that the trial court, absent a grant of reconsideration of the order within the time for taking the appeal, is without power to reset the time for taking an appeal. **See Commonwealth v. Smith**, 501 A.2d 273, 275 (Pa. Super. 1985) ("A court may not enlarge the time for filing a notice of appeal as a matter of grace or indulgence.") (citations omitted). However,

> [i]t has long been the law of this Commonwealth that the failure to file a timely appeal as a result of a breakdown in the court system is an exception to that general rule.
>
> We have many times declined to quash an appeal when the defect resulted from an appellant's acting in accordance with misinformation relayed to him by the trial court. **See, e.g.**, **Commonwealth v. Flowers**, 149 A.3d 867, 872 (Pa. Super. 2016) (holding breakdown in court operation granted this Court jurisdiction over untimely appeal where trial court failed to correct counsel's misstatement about deadline for filing appeal and incorrectly provided that the appellant had an additional thirty days to appeal from order denying motion for reconsideration of sentence[] imposed upon revocation of intermediate punishment); **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007) (compiling cases in which the "courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise [a]ppellant of his post-sentence and appellate rights or misadvised him"); **Commonwealth v. Parlante**, 823 A.2d 927, 929 (Pa. Super. 2003) ("[W]e decline to quash this appeal because [the late appeal] resulted from the trial court's

---

[1] As the 10th day after receipt of the transcript fell on a Saturday, July 6, 2024, the final day to file the post-dispositional motion was Monday, July 8, 2024.

misstatement of the appeal period, which operated as a breakdown in the court's operation.") (internal quotation marks omitted); *Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa. Super. 2001) (same).

*Commonwealth v. Stansbury*, 219 A.3d 157, 160 (Pa. Super. 2019) (some citations omitted).

Here, the juvenile court clearly directed that the post-dispositional motion could be timely filed 10 days after counsel received the transcripts in this matter, thereby, perhaps unintentionally, extending the appeal period. We find the court's grant of this extension fell under the ambit of a court's "misstatement of the appeal period." *Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa. Super. 2001). In granting counsel's request to extend the time period in which to file a post-dispositional motion, the juvenile court necessarily conveyed, incorrectly, that the appeal period could be extended. *See id.* Accordingly, we find we have jurisdiction to hear this appeal.

A.J.M. raises the following issues on appeal:

1. Did the juvenile court err in finding [A.J.M.] delinquent when evidence existed that [A.J.M.] acted in self-defense and the Commonwealth failed to meet its burden of proving that he had not acted in self-defense, thereby depriving [A.J.M.] of due process and a fair adjudicatory hearing?

2. Did the juvenile court err in finding [A.J.M.] committed the offense of strangulation when the Commonwealth failed to provide sufficient evidence that [A.J.M.]'s conduct involved choking I.O. or impeded either her breathing or blood circulation, thereby depriving [A.J.M.] of due process and a fair adjudicatory hearing?

Appellant's Brief, at 2.

A.J.M. first argues the trial court erred in finding him delinquent when the Commonwealth failed to meet its burden of proving he had not acted in self-defense.

Although the defendant has no burden to prove self-defense, before the defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012). "Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Id.* (citation and internal quotation marks omitted).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted). A court's assertion that a defendant's testimony is incredible does not relieve the Commonwealth of its burden. *See id.* at 788. "If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness." *Id*. (citation and internal quotation marks omitted).

Here, A.J.M. elected not to testify at trial in order to explain what he believed the situation to be when he grabbed the victim by the neck. A.J.M., further, did not present any evidence of his own. Instead, the self-defense

argument here is premised upon the Commonwealth's evidence; namely, the testimony from both Commonwealth witnesses that A.J.M. had told both of them that the victim was punching him on the chest before he grabbed her by the neck. *See* N.T., 10/5/23, at 28, 38, 40-41. This evidence was construed by defense counsel in order to briefly claim self-defense during closing argument. The entire argument in this regard is as follows:

> The only testimony, the only evidence about what happened when [the victim] blacked out was my client's statements really to [K.Y.]; and those represent self-defense. She had attacked him, and he was doing this to get her off of him.
>
> The case law is clear and, in fact, the jury instructions are clear that in these situations, one need not have the time or the ability to consider the niceties of use of force.

*Id.* at 45.

However, while K.Y. confirmed A.J.M. "told me that she was beating on him and showed me the way she was doing it," *id.* at 40, she confirmed she did not see any injury on A.J.M., or any bruising or redness on his chest, despite his shirt being off. *See id.* at 42.

We do not find this evidence justifies a finding of self-defense. *See Mouzon*, 53 A.3d at 740. Because there was no evidence presented at trial that could justify a finding of self-defense, the issue was not properly before the fact-finder.

In his second and final issue, A.J.M. argues the juvenile court erred in finding him guilty of strangulation when the Commonwealth failed to provide

sufficient evidence that A.J.M.'s conduct involved choking the victim or impeded either her breathing or blood circulation.

A.J.M. was guilty of strangulation if he "knowingly or intentionally impede[d] the breathing or circulation of blood of another person by … applying pressure to the throat or neck." 18 Pa.C.S.A. § 2718(a)(1).

Here, the victim admitted that she could not personally remember anything from that night after a certain point. However, she testified that A.J.M. told her that he choked her when she asked him about red marks that she noticed on her neck. The Commonwealth presented a picture of red marks on the victim's neck. Finally, a second witness testified that A.J.M. also told her that he grabbed the victim by the neck.

If believed, this evidence was sufficient to establish A.J.M. intentionally impeded the victim's breathing by applying pressure to her neck. A.J.M. admitted to two people that he grabbed the victim by the neck, and applied enough pressure to leave dark red marks on her neck. The court was entitled to infer A.J.M. intended the pressure to the victim's neck to impede her breathing.

As we find both issues raised are without merit, we affirm the dispositional order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/6/2025